**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

DANIEL KAHAKU,
CDCR #J-61059,

Plaintiff,

vs.

C. REDDEN, Correctional Counselor; and
O. MEDINA, Correctional Counselor,

Defendants.

Case No.: 26-cv-02865-WQH-BJW

**ORDER**

HAYES, Judge:

Plaintiff Daniel Kahaku, who is unrepresented and incarcerated at Ironwood State Prison ("ISP"), has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff claims that two correctional counselors at Centinela State Prison violated his First Amendment rights when they revoked his family visitation privileges in retaliation for his having filed prior lawsuits and grievances alleging prison staff misconduct. (ECF

No. 1 at 2–3.) Plaintiff seeks reinstatement of his privileges as well as compensatory and punitive damages. *Id.* at 8.

On June 1, 2026, the Court denied Plaintiff leave to proceed *in forma pauperis* ("IFP") because he failed to comply with 28 U.S.C. § 1915(a)(2) but granted him leave to correct this deficiency. (ECF No. 3 at 3.) On June 29, 2026, Plaintiff filed a renewed IFP motion. (ECF No. 4.)

For the reasons explained, the Court grants Plaintiff's renewed Motion to Proceed IFP, conducts a preliminary screening of his complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), finds it alleges a plausible First Amendment retaliation claim and a plausible related conspiracy claim, and directs the United States Marshal to effect service of process upon Defendants pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

## I. RENEWED MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' . . . the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners: under the current version of

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). The $55 administrative portion of the fee does not apply to persons granted leave to proceed IFP. *Id.*

the IFP statute, ‘if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.’” *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) “provides a structured timeline for collecting this fee.” *Id.* (citing 28 U.S.C. § 1915(b)(1)–(2)).

To proceed IFP, prisoners must “submit[] an affidavit that includes a statement of all assets [they] possess[,]” as well as a “certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint.” 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court “shall assess and when funds exist, collect . . . an initial partial filing fee,” which is “calculated based on ‘the average monthly deposits to the prisoner’s account’ or ‘the average monthly balance in the prisoner’s account’ over a 6-month term; the remainder of the fee is to be paid in ‘monthly payments of 20 percent of the preceding month’s income credited to the prisoner’s account.” *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Here, Plaintiff’s renewed requests comply with both 28 U.S.C. § 1915(a)(1) and (2). In support of his supplemental IFP Motion, Plaintiff has now submitted a copy of his California Department of Corrections and Rehabilitation (“CDCR”) Inmate Trust Account Statement Report and a certified Prisoner Certificate. (ECF No. 4 at 6–9); *see also* S.D. Cal. Civ. L. R. 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff maintained an average monthly balance of $227.25 in his prison trust account and had $149.66 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his complaint. (ECF No. 4 at 6.) At the time of filing, Plaintiff’s available balance was $36.33. *See id.* Accordingly, the Court **GRANTS** Plaintiff’s renewed Motion to Proceed IFP (ECF No. 4) and assesses an initial partial filing fee of $45.45

pursuant to 28 U.S.C. § 1915(b)(1). This initial fee need be collected, however, only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The CDCR must thereafter collect the full balance of the $350 total fee owed in this case and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

## II. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(a)

### A. Standard of Review

Because Plaintiff is a prisoner and proceeding IFP, his Complaint requires an initial screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (discussing 28 U.S.C. § 1915(e)(2)) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted). Likewise, § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).

Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

**B. Allegations in the Complaint**

Plaintiff claims that Correctional Counselors Redden and Medina retaliated against him for filing lawsuits against corrections officers. (ECF No. 1 at 4–5.) He lists a series of events leading up to Defendants' alleged retaliatory actions which have taken place at CSP following his transfer from Mule Creek State Prison ("MCSP") on September 7, 2024. *Id.* at 4.

While at MCSP, Plaintiff filed a "retaliation lawsuit against staff at MCSP." *Id.* After arriving at CSP, Plaintiff was called to Counselor "Redden's office for a settlement conference attended by Redden and the Attorney General." *Id.* "At the end of the hearing," Plaintiff asserts, "Redden expressed his disapproval of inmates filing lawsuits against staff." *Id.*

Sometime later, Redden revoked Plaintiff's "family visiting privileges," which Plaintiff indicates were approved for him "around June 2022." *Id.*

Plaintiff asserts that CDCR procedures provide that, "[a]fter an inmate receives family visiting privileges in a prior review, future applications follow the standard process without additional review unless a new crime occurs." *Id.*

Plaintiff further alleges that "Redden brought the issue of denying family visits to the Committee members for a hearing." (ECF No. 1 at 5.) Plaintiff thereafter "met with Committee members, Defendants Medina and Redden, on July 10, 2024." *Id.* "At the hearing, the Captain expressed confusion about why the Plaintiff was not allowed to

receive approval for family visits. The plaintiff stated that the hearing was conducted as a result of defendant Redden's alleged retaliatory actions to deny family visitation, purportedly due to his disapproval of inmates pursuing legal action against staff members." *Id.* Plaintiff therefore posits that "Redden and Medina conspired to influence the Captain to uphold the denial of family visits. The plaintiff was subsequently directed to exit the committee room, thereby preventing him from observing the conversations between Defendants Redden and Medina, which were intended to influence the Captain's decision regarding the denial of family visiting privileges." *Id.*

Next, Plaintiff indicates, he "was subsequently requested to re-enter the committee room, where it was decided that family visitation privileges would not be restored." *Id.* Per Plaintiff, "Redden and Medina denied family visiting privileges in an effort to discourage Plaintiff from exercising his First Amendment rights." *Id.*

Plaintiff proclaims that "Redden stated to Plaintiff, 'So you're into filing lawsuits against staff. Inmates should never have the ability to file lawsuits. We don't condone that shit here.'" *Id.* In turn, Plaintiff says he "understood that the actions of Defendants Redden and Medina were aimed at punishing him for filing civil complaints." *Id.*

Denial of his family visitation led Plaintiff to experience "severe depression and anxiety." *Id.* He has "experienced significant distress, expressing concern that he would be unable to sustain a meaningful relationship with his wife." *Id.*

Plaintiff's Complaint presents two causes of action: First Amendment relation and conspiracy under § 1983. (ECF No. 1 at 6–8.) The Complaint names both Defendants in their individual capacity and seeks compensatory and punitive damages and declaratory and injunctive relief. *Id.*

**C. Discussion**

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (citing 42 U.S.C. § 1983). The statute, though "not itself a source of substantive rights, . . . provides a method for vindicating federal rights

elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation and internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). Complaints filed pro se must be "liberally construed, particularly where civil rights claims are involved." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citations omitted).

**1. Section 1983 Claim for First Amendment Retaliation**

"The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts, for '[w]ithout those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.'" *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005)). Thus, "[p]risoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison*, 668 F.3d at 1114 (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). In the prison context, a First Amendment retaliation claim has five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." 408 F.3d at 567–68.

The Court has reviewed Plaintiff's Complaint and finds it contains First Amendment retaliation allegations sufficient to survive the "low threshold" set for *sua sponte* screening. *See Watison,* 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121, 1123. Plaintiff alleges that Redden's removal of his family visitation privileges directly followed Redden's stated disapproval — around the time of Plaintiff's settlement conference for a prior retaliation lawsuit — of prisoner-initiated litigation against CDCR staff. (ECF No. 1 at 4–5.) Plaintiff expressly alleges that "Redden and Medina denied [him] family visiting privileges in an effort to discourage Plaintiff from exercising his First Amendment rights." *Id.* at 5; *see*

*Watison*, 668 F.3d at 1114 ("The filing of an inmate grievance is protected conduct."); *see also Sorranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) ("[A] plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that [] protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision.") (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Plaintiff identifies the loss of family visitation and ensuing depression, anxiety, and distress as harms resulting from Defendants' alleged conduct. *See, e.g.*, *Davis v. Hutcheson*, 2020 WL 3047437, at *2 (E.D. Cal. June 8, 2020) (finding correctional officer's damage or destruction of prisoner's property was sufficiently adverse consequence to sustain First Amendment retaliation claim). Plaintiff also clarifies that prison administrative procedures typically dictate renewal of family visitation privileges once granted so long as a prisoner has not suffered a conviction for a new crime. (ECF No. 1 at 4); *see Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) ("The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains."). Thus, as pleaded, the Court finds Plaintiff's First Amendment retaliation allegations are "sufficient to warrant . . . an answer." *Wilhelm*, 680 F.3d at 1123.

**2. Civil Conspiracy Claim Pursuant to Section 1983**

To establish § 1983 conspiracy liability, "a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal quotations and citation omitted). "Such an agreement . . . may be inferred on the basis of circumstantial evidence." *Id.* (internal quotations and citation omitted). "Each . . . conspiracy [participant] need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* (internal quotations and citation omitted); *see also Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004) ("To state a claim for conspiracy to violate constitutional rights, the plaintiff must state specific facts to support the existence of the claimed conspiracy." (internal citations omitted)).

As discussed above, Plaintiff states a colorable underlying constitutional violation.

As to the alleged agreement, Plaintiff points to Redden and Medina's actions before the captain charged with assessing whether to revoke or deny Plaintiff family visits. (ECF No. 1 at 5.) Plaintiff indicates that a private conversation between Defendants and the captain took place following Plaintiff's expression to the captain that Redden was retaliating against him because of pursuit of "legal action against staff members." *Id.* Plaintiff's Complaint alleges facts that are "suggestive" of an agreement to engage in "illegal conduct." *See Twombly*, 550 U.S. at 564 n.8. It is clear that Plaintiff has "nudged his claim[]" that Redden and Medina conspired to orchestrate the retaliatory denial of Plaintiff's family visitation "across the line from conceivable to plausible." *See Iqbal*, 556 U.S. at 680 (internal quotation marks omitted); *cf. Johnson v. Slave-Noose*, No. 3:22-CV-00290-ART-CSD, 2023 WL 2877135, at *4 (D. Nev. Jan. 12, 2023) (colorable First Amendment conspiracy alleged based on defendant-correctional officers' alleged role in securing plaintiff's placement in solitary confinement to punish his filing of grievances and a lawsuit).

Accordingly, the Court will direct U.S. Marshal service upon Defendants Redden and Medina on Plaintiff's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

## III. CONCLUSION

For the reasons discussed, the Court:

1. **GRANTS** Plaintiff's renewed Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a). (ECF No. 4.)

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $45.45 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account

exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) for Defendants Redden and Medina and forward it to Plaintiff along with a copy of this Order, and two blank U.S. Marshal Form 285s for both Defendants. In addition, the Clerk will provide Plaintiff with certified copies of his Complaint and the summons so that he may serve Defendants Redden and Medina. Upon receipt of this "In Forma Pauperis Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, *include an address where both Defendants Redden and Medina may be found or be subject to service* pursuant to S.D. Cal. Civ. L.R. 4.1(c), and return the forms to the United States Marshal according to the instructions the Clerk provides in the letter accompanying the In Forma Pauperis Package.

5. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants Redden and Medina as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

6. **ORDERS** Defendants Redden and Medina, once served, to reply to Plaintiff's Complaint and any subsequent pleading Plaintiff files in this matter in which these Defendants are named as parties within the time provided by the applicable provisions of Federal Rules of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (While defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening, defendants are required to respond.).

7. **ORDERS** Plaintiff, after service, to serve upon Defendants Redden and Medina, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's

consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk, a certificate stating the manner in which a true and correct copy of that document has been served on the Defendants or Defendants' counsel, and the date of that service. *See* S.D. Cal. Civ. L. R. 5.2. Any document received by the Court which has not been properly filed with the Clerk of Court, or which fails to include a Certificate of Service upon Defendants or Defendants' counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated: 11/9/2026

William Q. Hayes

Hon. William Q. Hayes
United States District Court